Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED
April 17, 2024
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> **CLYDE J. MOORE** and <br> **MARK A. BROUSSARD**, <br><br> Defendants. | **SEALED** <br><br> CRIMINAL NO. **4:24-cr-00204** |

## INDICTMENT

THE GRAND JURY CHARGES:

### Introduction

At all times material to this Indictment:

1. Personal injury law is an area of legal specialization. Personal injury cases are civil lawsuits brought by plaintiffs seeking compensation for damages caused by a defendant. Once a plaintiff establishes liability of a defendant through trial or settlement, the defendant, or commonly the defendant's insurer, compensates the plaintiff for the damages, often including the cost of medical care. Medical providers commonly provide care to the plaintiff under a Letter of Protection from the plaintiff's attorney, which promises payment of the provider's medical bills from the eventual legal settlement.

2. The parties to a personal injury case may agree to settle the case for a certain amount of money instead of going to trial. Typically, when a personal injury case settles, the insurer pays the settlement funds to the plaintiff's attorney who then distributes the funds from a trust account to pay the case expenses, medical expenses, and attorney's fees incurred in the case, with the remaining settlement funds going the plaintiff. The distribution of settlement funds is reflected in

1

a client settlement disbursement statement prepared by the plaintiff's attorney, which the client reviews and approves.

3.  CLYDE J. MOORE ("MOORE"), operating as Clyde J. Moore Attorney at Law, P.C. (the "MOORE Firm"), was an attorney who represented clients in personal injury cases that arose mainly from car accidents.

4.  MARK A. BROUSSARD ("BROUSSARD") was employed by the MOORE Firm as the Office Manager. Among other duties, he obtained referrals of car accident cases for the MOORE Firm, and he helped process case settlements.

5.  Employee 1 was employed by the MOORE Firm as the Settlement Coordinator. Among other duties, she negotiated bill reductions with medical providers and generated client settlement disbursement statements.

6.  Employee 2 was employed by the MOORE Firm as a legal assistant who, for a time, assisted Employee 1 with case settlement.

7.  Employee 3 was employed by the MOORE Firm as a legal assistant who assisted Employee 1 with case settlement.

## COUNT ONE
### (18 U.S.C. § 371 – Conspiracy)

8.  The Grand Jury adopts, realleges, and incorporates herein the Introduction section of the Indictment.

9.  Beginning in or around 2012 and continuing through in or around 2021, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the Defendants,

**CLYDE J. MOORE** and
**MARK A. BROUSSARD**,

did knowingly combine, conspire, confederate, and agree with each other, with Employee 1, Employee 2, and Employee 3, and with others known and unknown to the Grand Jury, to commit an offense against the United States, namely, mail fraud, in violation of Title 18, United States Code, Section 1341.

**Manner and Means of the Conspiracy**

It was part of the conspiracy that:

10. MOORE and BROUSSARD obtained personal injury cases for the MOORE Law Firm by making cash payments to tow truck drivers, repair shop employees, or others who would refer car-wreck cases to the firm.

11. MOORE's injured clients often obtained medical treatment under a Letter of Protection from the MOORE Firm through which MOORE agreed to pay the medical provider's bills from funds obtained through settlement of the case.

12. The MOORE Firm made settlement demands on behalf of MOORE's clients to insurers. These settlement demands, which were often mailed to the insurers, typically included the client's medical bills or a summary of the bills. Insurers made settlement offers based in part on the stated value of the medical bills received from the MOORE Firm.

13. The MOORE Firm had reached an agreement with certain medical providers that they would accept a pre-set, reduced fee per procedure from what would be reflected in their bills. In addition, MOORE or his staff negotiated various additional medical bill reductions with medical providers.

14. At times, MOORE intentionally failed to disclose and pass along the cost savings from the reduced medical bills to his clients and thereby skimmed for himself a portion of the settlement funds that belonged to his clients. Without the knowledge of MOORE's clients, MOORE, BROUSSARD, Employee 1, Employee 2, and Employee 3 caused some settlement

disbursement statements to overstate what was paid by the MOORE Firm to satisfy certain medical bills. MOORE's clients relied on the inflated medical expense figures in the settlement disbursement statements in approving the proposed distribution of settlement funds, including to themselves. The funds from the undisclosed medical reductions that should have gone to the clients accumulated in MOORE's trust account.

15. Using the skimmed settlement funds, MOORE made personal expenditures from his trust account, including purchasing automobiles and paying his children's private school tuition. MOORE hid the skimmed funds by not transferring the funds to the firm's operating account, not disclosing the funds to his accountant, and not declaring the funds on his tax returns.

16. At MOORE's instruction, Employee 1 kept him informed of how much money was being skimmed from each client's settlement. Employee 1 also maintained a ledger that identified particular clients whose settlement funds had been skimmed. The ledger tracked the dollar amount of the skimmed funds that went to MOORE and to Employee 1. Both Employee 1 and Employee 2 made notations in the ledger to track the skimmed funds. With MOORE's approval, Employee 1 split her share of the skimmed funds with Employee 2 or Employee 3, both of whom, at different times, assisted Employee 1 with the settlement process.

17. Periodically, MOORE signed checks from the MOORE Firm account to pay Employee 1 and Employee 2 or 3 their portion of the skimmed funds, which MOORE and his staff referred to as "bonus payments." At the time MOORE made a "bonus payment," he would often sign or initial the ledger, indicating which clients' skimmed funds were being shared with Employee 1 and Employee 2 or 3.

18. When BROUSSARD came to work for MOORE, they agreed that BROUSSARD would receive half of the skimmed funds from the undisclosed medical bill reductions for clients

4

that BROUSSARD had brought to the MOORE Firm. MOORE periodically paid BROUSSARD his portion of the skimmed client settlement funds.

### Overt Acts of the Conspiracy

In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, at least one of the following overt acts, among others:

19. In approximately 2012, MOORE, reached an agreement with certain medical providers that they would accept a fixed fee per medical procedure for MOORE's clients despite the larger amounts they would bill the MOORE Firm.

20. In approximately 2012, MOORE and BROUSSARD reached an agreement that, on cases BROUSSARD brought to the MOORE Firm, MOORE would pay BROUSSARD half of the funds that had been skimmed from the settlement proceeds through overstated medical expenses.

21. In approximately 2012, MOORE reached an agreement with Employee 1 that he would pay her a share of the settlement proceeds that had been skimmed through overstated medical expenses.

22. In approximately 2012, MOORE instructed Employee 1 to report to him the amount of money that would be skimmed from each client's settlement proceeds through overstated medical expenses at the time she delivered the insurer's settlement check to him.

23. From approximately 2012 to 2017, BROUSSARD helped determine which medical expenses would be inflated, and by how much, on settlement disbursement statements.

24. On or about July 3, 2014, MOORE caused to be issued and signed checks 6131 and 6132 from the account of Clyde J. Moore Attorney at Law P.C. for Employee 1 and Employee 2, both in the amount of $591.50.

25. On or about April 24, 2015, MOORE caused to be issued and signed checks 7788 and 7789 from the account of Clyde J. Moore Attorney at Law P.C. to Employee 1 and Employee 2, both in the amount of $625.00.

26. On or about February 5, 2016, MOORE caused to be issued check 8876 from the account of Clyde J. Moore Attorney at Law, P.C. in the amount of $901.00 payable to Employee 1.

27. On or about May 3, 2016, MOORE caused to be issued and signed checks 9213 and 9214 from the account of Clyde J. Moore Attorney at Law, P.C. to Employee 1 and Employee 3, both in the amount of $829.50.

28. On or about May 3, 2016, MOORE signed the ledger maintained by Employee 1.

29. On or about October 17, 2016, MOORE caused to be prepared and signed a false and fraudulent 2015 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service.

30. On or about November 29, 2016, MOORE signed the ledger maintained by Employee 1.

31. On or about November 29, 2016, MOORE caused to be issued and signed checks 1443 and 1444 from the account of Clyde J. Moore Attorney At Law PC to Employee 1 and Employee 3, both in the amount of $1,020.50.

32. On or about March 10, 2017, MOORE caused a settlement disbursement statement to be provided to his client, R.R., indicating that $3,000.00 had been paid to 59 Pain and Rehabilitation Center on behalf of R.R.

33. On or about April 7, 2017, MOORE caused Amica Mutual Insurance Company to mail two settlement checks in resolution of claims by his client T.U.

34. On or about April 13, 2017, MOORE caused a settlement disbursement statement to be provided to his client, T.U., indicating that the MOORE Firm had paid $15,355.00 to 59 Pain and Rehabilitation Center on behalf of T.U.

35. On or about May 1, 2017, MOORE signed the ledger maintained by Employee 1.

36. On or about May 1, 2017, MOORE caused to be issued and signed checks 1958 and 1959 to Employee 1 and Employee 3, each for $1,025.50.

37. On or about May 22, 2017, MOORE withdrew approximately $53,155.00 from Chase bank account 7281, Clyde J. Moore, Attorney at Law, P.C. IOLTA Trust Account, for the purpose of purchasing cashier's checks in payment of his children's private school tuition.

38. On or about May 23, 2017, MOORE caused a settlement disbursement statement to be provided to his client, A.T., indicating that the MOORE Firm had paid $4,000.00 to 59 Pain and Rehabilitation Center on behalf of A.T.

39. On or about June 6, 2017, MOORE signed the ledger maintained by Employee 1.

40. On or about June 6, 2017, MOORE caused to be issued and signed checks 3007 and 3008 to Employee 1 and Employee 3, each for $1,013.50.

41. On or about June 10, 2017, MOORE withdrew approximately $162,526.98 from Chase bank account 7281, Clyde J. Moore, Attorney at Law, P.C. IOLTA Trust Account, for the purpose of acquiring a cashier's check to purchase a Ferrari Spider automobile.

42. On or about June 27, 2017, MOORE caused 59 Pain and Rehabilitation center to be paid $2,500.00 for services it had provided to MOORE'S client, R.R.

43. On or about June 27, 2017, MOORE caused 59 Pain and Rehabilitation center to be paid $10,000.00 for services it had provided to MOORE's client, T.U.

44. On or about June 27, 2017, MOORE caused 59 Pain and Rehabilitation center to be paid $3,166.67 for services it had provided to MOORE's client, A.T.

45. On or about February 24, 2018, MOORE caused to be prepared and signed a false and fraudulent 2016 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service.

46. On or about September 18, 2018, MOORE caused a letter to be mailed to Pronto General Agency, Ltd. demanding a payment equal to the policy limits in settlement of a claim by MOORE's client D.A.

47. On or about October 26, 2018, MOORE caused a settlement disbursement statement to be provided to his client, D.A., indicating that the MOORE Firm had paid $4,000.00 to Davinci Pain Consultants on behalf of D.A.

48. On or about November 20, 2018, MOORE signed the ledger maintained by Employee 1.

49. On or about November 20, 2018, MOORE caused to be issued and signed checks 4969 and 4970 to Employee 1 and Employee 3, each for $1,174.50.

50. On or about December 7, 2017, MOORE withdrew $162,695.98 from Chase bank account 7281, Clyde J. Moore, Attorney at Law, P.C. IOLTA Trust Account, for the purpose of acquiring a cashier's check to purchase a Ferrari FF automobile.

51. On or about October 11, 2018, MOORE caused to be prepared and signed a false and fraudulent 2017 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service.

52. On or about January 14, 2019, MOORE caused to be mailed a letter to Liberty Mutual Insurance Company demanding $200,000.00 in settlement of a claim by MOORE's client, S.V.

53. On or about April 18, 2019, MOORE caused to be issued and signed checks 5477 and 5478 to Employee 1 and Employee 3, each for $1,044.00.

54. On or about April 25, 2019, MOORE caused to be mailed a letter to State Farm insurance company demanding the policy limits in settlement of a claim by MOORE's client A.A.

55. On or about May 3, 2019, MOORE deposited Liberty Mutual Insurance check 0050123792 in the amount of $60,000.00 payable to Clyde J Moore Attorney At Law PC and S.V. to the law firm's trust account.

56. On or about July 15, 2019, MOORE caused to be mailed to GEICO insurance company a cover letter and medical records relating to his client, A.S.

57. On or about August 20, 2019, MOORE caused GEICO insurance company to mail a settlement check in the amount of $25,000.00 payable to Attorney Clyde J. Moore and A.S. in settlement of a claim by A.S.

58. On or about September 9, 2019, MOORE caused a settlement disbursement statement to be provided to his client, H.A., indicating the MOORE Firm had paid $15,098.46 to Interventional Spine of Texas on behalf of H.A.

59. On or about September 16, 2019, MOORE caused a settlement disbursement statement to be provided to his client, A.S., indicating the MOORE Firm had paid $6,000.00 to Interventional Spine of Texas on behalf of A.S.

60. On or about September 18, 2019, MOORE caused a settlement disbursement statement to be provided to his client, M.G., indicating the MOORE Firm had paid $3,000.00 to Interventional Spine of Texas on behalf of M.G.

61. On or about October 3, 2019, MOORE caused to be issued check 7324 in the amount of $8,000.00 and check 7325 in the amount of $2,000.00, both payable to Dr. Kenneth L. Le, M.D., for the purpose of paying Interventional Spine of Texas $10,000.00 in total for services performed by Interventional Spine of Texas for A.S., M.G., and H.A.

62. On or about October 15, 2019, MOORE caused to be prepared and signed a false and fraudulent 2018 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service.

63. On or about October 15, 2020, MOORE caused to be prepared and signed a false and fraudulent 2019 U.S. Individual Income Tax Return, Form 1040, which was submitted to the Internal Revenue Service.

64. From approximately 2017 to 2021, BROUSSARD periodically demanded that MOORE pay him, among other funds, BROUSSARD's share of the skimmed settlement proceeds that MOORE owed him.

65. On or about July 28, 2021, BROUSSARD filed a plaintiff's Third Amended Petition in Harris County District Court against MOORE and the Moore Firm, demanding, in part, his share of the skimmed settlement proceeds from MOORE.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO – FOUR
**(Mail Fraud, 18 U.S.C. §§ 1341 and 2)**

A.    INTRODUCTION

66.    The Grand Jury adopts, realleges, and incorporates herein the Introduction section of the Indictment.

B.    THE SCHEME AND ARTIFICE

67.    From in or about 2012, and continuing until in or about 2021, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the Defendant,

**CLYDE J. MOORE**,

knowingly devised and intended to devise a scheme and artifice to defraud his clients, and to obtain money by means of materially false and fraudulent pretenses, representations and promises, in that he misrepresented to his clients how much he had paid for medical expenses on their behalf, claiming he had paid more than he had, and thereby misappropriated a portion of their settlement funds.

C.    MANNER AND MEANS OF THE SCHEME

68.    The Grand Jury adopts, realleges, and incorporates herein the Manner and Means section of Count One of the Indictment.

D.    EXECUTION OF THE SCHEME

69.    On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the Defendant, **CLYDE J. MOORE**, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money by material false and fraudulent representations, pretenses, and promises, did knowingly cause to be mailed the items listed below:

| Count | Approximate Date of Mailing | Mailing |
|---|---|---|
| 2 | 4/25/2019 | MOORE caused to be mailed a letter to State Farm insurance company demanding the policy limits in settlement of a claim by MOORE's client A.A |
| 3 | 7/15/2019 | MOORE caused to be mailed to GEICO insurance company a cover letter and medical records relating to his client, A.S. |
| 4 | 8/20/2019 | MOORE caused GEICO insurance company to mail a settlement check in the amount of $25,000.00 payable to Attorney Clyde J. Moore and A.S. in settlement of a claim by A.S. |

In violation of Title 18, United States Code, Sections 1341 and 2.

## NOTICE OF FORFEITURE
### (18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

70. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), through application of Title 28, United States Code, Section 2461(c), the United States gives notice to Defendants,

**CLYDE J. MOORE** and
**MARK A. BROUSSARD**,

that upon conviction of a violation of Title 18, United States Code, Sections 371 or 1341, all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, is subject to forfeiture.

### Money Judgment and Substitute Assets

71. The United States gives notice that it will seek a money judgment against each of the Defendants. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the Defendants in substitution.

A TRUE BILL:

Original Signature on File
FOREPERSON OF THE GRAND JURY

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

*Robert S. Johnson*
ROBERT S. JOHNSON
ASSISTANT UNITED STATES ATTORNEY